UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| JOHN ANTHONY WITHERSPOON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> WTI TRANSPORT, INC., ) <br> ) <br> Defendant. ) | Case No.: 7:14-cv-02462-JHE |

**MEMORANDUM OPINION AND ORDER** [1]

Plaintiff John Anthony Witherspoon initiated this action against his former employer Defendant WTI Transport, Inc. ("WTI") asserting claims for disability discrimination and retaliation pursuant to Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq., as amended, ("ADA"), based on his termination. (Doc. 1). WTI moves for summary judgment. (Doc. 29). The motion is fully briefed and ripe for review. (Docs. 30, 33, 35, 38). For the reasons stated below, WTI's motion for summary judgment, (doc. 29), is **GRANTED IN PART AND DENIED IN PART**.

**I. Standard of Review**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings, the discovery, and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 21).

1

and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 447 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a Court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. V. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts[2]

### A. Witherspoon's Position and Job Duties

WTI is a trucking company that provides flatbed carrier service to manufacturers to deliver their products. (Doc. 31-1 at ¶2). WTI sends its trucks to customer locations for loading, transport, and unloading. (*Id.* at ¶3). WTI contends that, depending on the size of its customer and the number of loads it ships, the loading is performed in one of three ways. (*Id.*). Some large customers have their own personnel on0si8te who perform the loading onto WTI trailers. (*Id.*). For other customers who do not have frequent loads, the over-the-road ("OTR") drivers may perform the loading. (*Id.*). And, according to WTI, for customers with a significant number of loads but without their own loading personnel, WTI provides a Loader, a WTI employee who drives the truck to the customer's facility, performs the loading, and leaves the loaded trailer at the customer's facility where the OTR Driver takes the load to its ultimate destination. (*Id.*).

WTI hired Plaintiff John Anthony Witherspoon ("Witherspoon") on May 18, 2001. (*Id.* at ¶4). WTI contends it hired Witherspoon to deliver loads to TAMKO, a local manufacturing customer and that his job included securing the load for TAMKO, requiring him to throw tarps and straps over the load to secure it on both sides of the truck. (Doc. 31-1 at ¶4). Witherspoon disputes this characterization, contending that he was hired, continually employed, and performed work for WTI as a "Loader" or a "Tuscaloosa Loader." (Doc. 34 at ¶3). In addition to an affidavit attesting to his position, Witherspoon provides payroll documentation that lists his position as

---

[2] All citations to the record reference document and page numbers as assigned by the Court's electronic filing system (CM-ECF), except for citations to depositions, which refer to both the CM-ECF page number and the deposition page (and often line numbers). Internal page numbers have been disregarded with the exception of page numbers for deposition transcripts.

"Loader," "Loader Tuscaloosa," and "Tuscaloosa Loader." (Doc. 34 at 9-11).

In April 2004, Witherspoon sustained a lower back injury and was restricted by his physician from throwing straps and tarps, which WTI accommodated.[3] (Doc. 31-1 at ¶5). According to WTI, in July 2005, its business with TAMKO ended, and WTI transferred Witherspoon to work as a Loader at GAF, another manufacturer approximately one-half mile from Witherspoon's reporting location. (Doc. 31-1 at ¶6). WTI contends Witherspoon drove a truck with an empty trailer from WTI to GAF, had the trailer loaded at GAF, and then drove it back to the WTI facility for an OTR Driver to transport it to its ultimate destination. (*Id.*). WTI further contends that, because of the short distance between WTI and GAF, Witherspoon was not required to secure the load with straps. (*Id.*).

Witherspoon disputes this characterization, first pointing to payroll documents dated June 9, 2005 and September 7, 2005, listing his position as "Loader" and "Loader Tuscaloosa," and not as a Loader for any particular client. (Doc. 34 at 9-10). Witherspoon attests that he performed, among other duties, load securement work for multiple WTI customers, and not as a dedicated loader just for any one customer. (*Id.*). Specifically, Witherspoon states that, along with another WTI Loader, he performed work for multiple WTI customers, including GAF, Tamko, Nucor Steel, U.S. Pipe, ASIPCO, GAF, Atlas Roofing, Scott's Turf, and more. (*Id.* at ¶4). Disputing WTI characterization of his duties, Witherspoon attests that, along with another WTI Loader, he performed load securement work using various securing methods for multiple companies and performed other job duties, including short haul driving, truck recovery when drivers left trucks

---

[3] WTI's written ADA policy tells WTI employees with a disability to speak to their supervisor and request and accommodation, and that WTI, in accordance with the ADA, will determine whether a reasonable accommodation exists. (Doc. 34 at 14).

4

for various reasons, giving road tests for drivers, etc. (*Id.* at ¶¶5=6).

Witherspoon also offers an affidavit from Nakia Steele ("Steele"), who was employed as a driver for WTI in Tuscaloosa for over ten years, including during Witherspoon's employment. (Doc. 34 at 7-8). Steele attests that, including during the end of 2013 and the beginning of 2014, she observed Witherspoon load and secure trailers for WTI at Nucor, GAF, and TAMKO. (*Id.* at ¶4). Steel further attests that Witherspoon accomplished these duties without "throwing chains" "by walking into the loaded trailers from a loading platform and securing the appropriate straps or chains onto each side of the trailer from above, rather than standing on one side of the trailer and throwing chains across the trailers[]" and that this is the same methods she and numerous other WTI drivers and loaders used to secure loaded trailers at Nucor and TAMKO (*Id.* at ¶¶5-6).

**B. WTI's Reduction-in-Force/Witherspoon's Termination**

According to WTI, in May 2014, GAF notified WTI that it was reducing the number of loads WTI would ship. (Doc. 31-1 at ¶7). WTI contends that, based on the reduction in loads from the customer, it concluded that GAF business did not justify having an assigned Loader. (*Id.* at ¶8). WTI states it eliminated the GAF Loader position and assigned the OTR Drivers to perform the loading for remaining GAF loads. (*Id.*). Therefore, WTI asserts, it had only one other Loader position, which was occupied at the time and remains occupied through the date of briefing. (*Id.* at ¶9). With no other open position, WTI laid-off Witherspoon on May 20, 2014. (Doc. 31-1 at ¶10).

As noted above, Witherspoon disputes WTI's characterization that he was a "GAF Loader." He also disputes many of the facts surrounding his termination. Specifically, Witherspoon attests that, at the time of the lay-off, he met with Larry Baker, WTI's Director of Operations, who told Witherspoon he had met with WTI executives and they had decided to

terminate Witherspoon "because [he] can't throw chains." (Doc. 34 at ¶11). Witherspoon attests that he then explained that he was already performing and could continue to successfully perform his job duties for WTI in a variety of ways, despite that physical limitation. (*Id.* at ¶12). Witherspoon also said he could do more work from some customers and less for others in conjunction with the other loaders and the OTR Drivers and that he could do more loads for different customers where WTI was paying the OTR Drivers extra money. (*Id.* at ¶13). Additionally, knowing he made what translated to a very good hourly rate, Witherspoon offered to work less hours, part time, or a different schedule/type of schedule and offered to do more short haul driving or any other type of driving. (*Id.* at ¶¶14-15). According to Witherspoon, the only response he was given was that, WTI was "sorry" and that since he could not throw chains, WTI had to let him go. (*Id.* at ¶16).

Witherspoon offers evidence that at the same time he was terminated, in the Spring of 2014, WTI had to open a new location to handle all their increasing business as they had "outgrown their boundaries" in a "very successful year." (Doc. 34 at 12).

### III. Analysis

In the absence of direct evidence of discrimination, a plaintiff may establish a *prima facie* case of an ADA violation through circumstantial evidence using the familiar burden-shifting analysis employed in Title VII employment discrimination cases. *See Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1226 (11th Cir.1999).

To state a *prima facie* case of discrimination under the ADA, a plaintiff must show (1) that he has a covered disability; (2) he was otherwise qualified to perform the job, and (3) he was discriminated against based upon the disability. *Williams v. Motorola*, 303 F.3d 1284, 1290 (11th Cir. 2002). Likewise, to establish a *prima facie* case for ADA retaliation, a plaintiff must show:

6

(1) he engaged in statutorily protected activity; (2) he suffered from an adverse employment action; and (3) a causal link between the protected activity and the adverse action. *Wilbourne v. Forsyth County School Dist.*, 2009 WL 19345 at *2 (11th Cir. 2009).

Once the plaintiff establishes a *prima facie* case of discrimination or retaliation, the defendant-employer must articulate a legitimate, non-discriminatory reason for the challenged action. *Wascura v. City of South Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir.2000) (en banc)). "If the defendant articulates one or more such reasons, the presumption of discrimination is eliminated and 'the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" *Id.* (quoting *Chapman*, 229 F.3d at 1024). If the plaintiff fails to proffer sufficient evidence to create a genuine issue of material fact as to whether each of the defendant's proffered reasons is pretextual, the defendant is entitled to summary judgment. *Id.* (citing *Chapman*, 229 F.3d at 1024-25).

**A. Disability Retaliation**

Although Witherspoon includes a claim for ADA retaliation in his complaint, (doc. 1 at 7-8), he offers no argument in response to WTI's motion for summary judgment on that claim. (*See* docs. 33 & 38). This absence is sufficient to justify summary judgment on the ADA retaliation claim. *See Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed

abandoned.") (internal citations omitted). Additionally, based on the evidence Rule 56 record, Witherspoon cannot state a *prima facie* case for ADA retaliation, as there is no evidence to support a causal link between Witherspoon's request for accommodation and his termination. (Doc. 30 at 4). In April 2004, after sustaining a lower back injury and being restricted by his physician from throwing straps and tarps, Witherspoon requested, and WTI provided, an accommodation allowing Witherspoon to perform his job duties without throwing straps and tarps. (Doc. 31-1 at ¶5). WTI laid-off Witherspoon on May 20, 2014, approximately ten years later. (Doc. 31-1 at ¶10). Witherspoon's ADA retaliation claim lacks the "close temporal proximity" between the protected expression and adverse action to constitute sufficient circumstantial evidence for purposes of a *prima facie* case. *See Hidgon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). As such, there is no genuine issue of material fact, WTI is entitled to summary judgment on Witherspoon's ADA retaliation claim

**B. Disability Discrimination**

The ADA prohibits a "covered entity" from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112 (a). Specifically, this includes a prohibition against "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." *Id.* at § 12112(b)(5)(B).

Based on the Rule 56 record, a reasonable jury could find that WTI terminated Witherspoon because of his disability or his need for an accommodation, i.e., because he could not throw chains

8

and tarps. Notably, Witherspoon has provided direct evidence of discrimination. Specifically, Witherspoon attests that, at the time of the lay-off, he met with Larry Baker, WTI's Director of Operations, who told Witherspoon he had met with WTI executives and they had decided to terminate Witherspoon "because [he] can't throw chains."[4] (Doc. 34 at ¶11).

Notwithstanding this piece of direct evidence of discrimination, and considering only the circumstantial evidence, there are genuine issues of material fact that preclude summary judgment on Witherspoon's disability discrimination claim. The parties do not dispute that the facts support the first two elements of a *prima facie* case, that Witherspoon had a covered disability and was otherwise qualified to perform his job. *See Williams*, 303 F.3d 1290. Instead, WTI argues Witherspoon cannot prove his was discriminated against because of his disability or that WTI's legitimate, non-discriminatory reason was a pretext for discrimination. (Doc. 30 at 4-5).

WTI's position boils down to the following: WTI accommodated Witherspoon's restriction for ten years, but when it faced a reduction in business, it made a business decision to reduce the number of Loaders from two to one and selected the Loader primarily responsible for that customer for reduction. (Doc. 35 at 4). A reduction-in-force based on a decline in business is a legitimate, non-discriminatory reason to terminate an employee. *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1331 (11th Cir. 1998). Therefore, following the framework outlined in *Wascura* and *Chapman*, the presumption of discrimination is eliminated, and Witherspoon must point to

---

[4] To the extent this statement could be considered hearsay, hearsay evidence may be considered on a motion for summary judgment if the statement could be reduced to an admissible form at trial and the statement would be admissible at trial for some purpose. *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir.1999). "For example, the statement might be admissible because it falls within an exception to the hearsay rule, or does not constitute hearsay at all (because it is not offered to prove the truth of the matter asserted), or is used solely for impeachment purposes (and not as substantive evidence). *Id.* at 1323–24. WTI does not object to this evidence as hearsay or on any other ground. (*See* doc. 35).

evidence sufficient to permit a reasonable factfinder to conclude that WTI's reason was not the real reason for his termination. *Wascura*, 257 F.3d at 1242 (citing *Chapman*, 229 F.3d at 1024). Witherspoon has done just that.

Witherspoon has offered evidence that he was continually employed as a "Loader" (or "Tuscaloosa Loader") and not as a dedicated Loader for a particular customer. (Doc. 34 at 9-10). Witherspoon attests he, with another WTI Loader, performed work for multiple customers, performed load securement work using various methods for these multiple customers, and performed other job duties including short haul driving, truck recovery, administering road tests, etc. (Doc. 34 at ¶¶ 3-7). Witherspoon also offers evidence that, at the same time as his termination based on alleged reduction in business, WTI had to open a new location to handle all of its increasing business as WTI had "outgrown their boundaries" in a "very successful year." (Doc. 34 at 12). Based on this evidence, a reasonable jury could conclude that, among other things, WTI chose Witherspoon to be the one adversely affected by any reduction in business from GAF, not because he was a "GAF Loader" or primarily handled GAF loads, but because he was the Loader WTI thought would require some more or further or different accommodation as a result of his disability.

## IV. Conclusion

Based on the foregoing, WTI's motion for summary judgment, (doc. 29), is **GRANTED IN PART AND DENIED IN PART**. The parties are encouraged to discuss alternative dispute resolution, including the potential for mediation. The parties are **ORDERED** to file a joint status report by **July 26, 2017**, regarding the status of such discussion and whether they believe mediation would be beneficial to the resolution of the remaining claim.

DONE this 12th day of July, 2017.

                                                _____
                                                **JOHN H. ENGLAND, III**
                                                UNITED STATES MAGISTRATE JUDGE